### AFFIDAVIT OF HSI SPECIAL AGENT STACY FLEISCHMAN
### <u>IN SUPPORT OF DETENTION</u>

#### *INTRODUCTION AND AGENT BACKGROUND*

1.      I am a Special Agent with United States Immigration and Customs Enforcement

Homeland Security Investigations ("HSI").  I make this affidavit in support of the government's

pending oral motion to detain pending trial **JACQUELYN R. LUNGELOW a/k/a "Baby J**."[1]

2.      I am a Special Agent with United States Immigration and Customs Enforcement

Homeland Security Investigations ("HSI"), and have been so employed since April 12, 2009.

During my career, I have conducted numerous investigations into identity fraud, document fraud,

drug smuggling, human trafficking, human smuggling, and worksite violations.  I am currently

assigned to the Human Smuggling/Trafficking and Worksite Enforcement Group, which

investigates the smuggling of foreign nationals into the United States, as well as the trafficking

of individuals within and from outside the United States.  I have received extensive training in

the area of immigration and customs law, as well as federal criminal and constitutional law and

evidence collection.  I am a graduate of Northeastern University, where I earned a Master's

Degree in Criminal Justice.

3.      I attended, and graduated from, the Federal Law Enforcement Training Center

(FLETC) in Brunswick, Georgia in 2009.   From my training and experience, I know that

individuals are trafficked for several purposes.  Some of these purposes are subjection into

involuntary servitude, peonage, debt bondage and slavery.  Human trafficking is often

accomplished through the use of fraud, force and coercion.  I am familiar with the federal and

state laws which make it a violation to engage in human trafficking, such as 18 U.S.C. §§ 1581

---

[1] In the event that additional defendants seek release pending trial, I anticipate the government will move to detain them as well.  As there are conspiracy charges against all of the defendants, the background and facts contained herein will also be relevant to any future detention motions.

through 1595 (Peonage, Slavery and Trafficking in Persons), 18 U.S.C. §§ 2421 through 2428 (Transportation for Illegal Sexual Activity and Related Crimes) and Massachusetts General Laws Chapter 272 related to the Prostitution industry.  I have debriefed, and continue to debrief, defendants, informants, and witnesses who have personal knowledge about human trafficking, including sex trafficking, and other crimes occurring in Massachusetts, nationally, and abroad.  I have also, as discussed below, attempted to stay abreast of current research and media reports concerning sex trafficking.

4.       Based on my training and experience, I am aware that 18 U.S.C. § 1591 makes it a federal offense for any person to knowingly recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person—or benefit financially or by receiving anything of value from participating in a venture, which has engaged in said acts—in or affecting interstate commerce, 1) knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act; or 2) knowing that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.  I am also aware that under 18 U.S.C. § 1591(c), if the defendant had "a reasonable opportunity to observe the person so recruited, enticed, transported, provided, obtained or maintained, the Government need not prove the defendant knew the person had not attained the age of 18 years."  I am aware that 18 U.S.C. § 1594 makes it a federal offense to attempt or conspire to commit any violation of 18 U.S.C. § 1591.  I am further aware that pursuant to 18 U.S.C. § 2423, it is a federal offense for a person to knowingly transport an individual who has not attained the age of 18 years in interstate commerce, with intent that such individual engage in prostitution.

5.       The facts in this affidavit come from my personal observations and review of records, my training and experience, information obtained from the review of police reports,

information obtained from interviews of witnesses, and other sources of information gathered through my investigation.  This affidavit is intended in support of the government's motion for detention and does not set forth all of my and the other investigators' knowledge about this matter.

### BACKGROUND OF INVESTIGATION

6.      Since approximately September 2012, I have been the case agent for an investigation of RAYMOND JEFFREYS, a/k/a "Skame Dollarz," "Skame" and "Frenchy" and his associates for sex trafficking and related crimes.  In approximately December 2012, I joined another HSI agent, Special Agent Eric Weindorf, in an investigation of COREY NORRIS, a/k/a "Case," VANESSA GRANDOIT, and DARIAN THOMSON, a/k/a "Bo."  Both investigations were conducted jointly with Detective Kara Connolly of the Boston Police Department ("BPD"), Human Trafficking Unit.  Early in my investigation of NORRIS and it associates, it was clear that there was a connection with JEFFREYS.  However, it was not until later in the investigation that the extent of the relationship between NORRIS and JEFFREYS was revealed.

7.      Specifically, the investigation revealed that NORRIS, JEFFREYS and others, including the co-defendants in both the superseding indictment and the original indictment, had worked together in various combinations over the course of at least eight years in at least six states, in a sex trafficking operation.

3

### BACKGROUND OF SEX TRAFFICKING IN BOSTON AND NATIONALLY

8.    Over the past several years, I and other investigators, including members of HSI, the Federal Bureau of Investigation ("FBI"), the Massachusetts State Police ("MSP"), and BPD (including BPD's Human Trafficking Unit, Homicide Unit, and Youth Violence Strike Force), have conducted both independent and collaborative investigations of Boston residents for sex trafficking, prostitution and related crimes.[2]  Through my own investigations and information shared with me by other investigators, I am aware that these crimes have become more prolific in Boston and other urban areas of Massachusetts, particularly among street gang members and their associates.  I believe that there are several reasons for the increase in these crimes.

9.    First, "pimping," or supervising the activities of prostitutes, is relatively easy to do.  Pimps advertise prostitutes on websites such as "Backpage" and Craig's List, which enable pimps to find "johns" in multiple cities or even over state lines.[3]  In addition, by promoting prostitutes on the web, pimps can more easily evade law enforcement.  Because the girls are off the street, their activities are much less visible to police or social services.[4]  Hotel rooms—often rented cheaply over websites such as Expedia or Travelocity—offer a secure and discrete operation for sexual encounters.  The only challenge for a pimp is to find prostitutes.

10.   Second, pimping is a lucrative business.  Sex traffickers typically impose nightly quotas of anywhere from $200 to $1,000 on prostitutes.[5]  Pimps take these proceeds and allow the prostitute to keep either no money or a small portion of the money.  In addition, pimps view

---

[2] Most of these investigations remain open and, as a result, I cannot name, or include details specific enough to identify them, for fear of alerting the targets of these investigations, which could cause targets to flee, create a risk of threats to victims and witnesses, or result in the destruction of evidence.

[3] *See, e.g.*, Phillip Martin, *Sexual and Human Trafficking in the Boston Area (Part Three)*, WGBH, July 12, 2010, http://www.wgbh.org/897/sex_and_labor_trafficking_in_new_england_part_3.cfm;  Robert Moossy, *Sex Trafficking: Identifying Cases and Victims*, Nat'l Inst. Just. No. 262 (2008), http://www.nij.gov/journals/262/Pages/sex-trafficking.aspx.

[4] Renee Loth, *Today's Slavery: A Unified Effort to End Human Trafficking*, Boston Globe, Jan. 29, 2011, at 11.

[5] Polaris Project, Comparison Chart of Primary Sex Trafficking Networks in the United States (2011).

sex trafficking as more profitable than other illegal markets.  While an individual can sell a drug or gun only once, a pimp can profit from one girl multiple times.[6]

11.     Third and perhaps most significantly, both street gang members and others who regularly engage in criminal activity in the Boston area have become very wary of other means of illegal income, such as drug or gun sales.  These individuals are aware that drug or gun dealing is a dangerous enterprise, drug dealers are at risk of violence from buyers, sellers and rival dealers.  Furthermore, especially with the mandatory minimum penalties applicable to drug and gun possession, drug dealers fear the legal consequences of their activities.  In contrast, many individuals view pimping as unlikely to result in criminal prosecution and, in the event that it does, unlikely to result in any kind of significant penalty.

12.     Historically, that view has been accurate.  Until recently, most laws only addressed straight prostitution.  For example, Massachusetts punished the crimes of soliciting for prostitution with a maximum sentence of two and a half years in jail and/or a fine of $5,000,[7] and deriving support from the earnings of prostitution with a maximum sentence of five years in prison and/or a fine of $5,000.[8]  The federal Trafficking Victims Protection Act, later amended, became law in 2000.  Massachusetts passed its first law addressing human trafficking, the Act Relative to the Commercial Exploitation of People, in 2011.  Prior to those statutes, there were no federal or state laws targeting sex trafficking in contrast to straight prostitution.

13.     Even so, law enforcement has only just begun to catch up to the magnitude of the problem.  Law enforcement efforts face numerous obstacles, such as inadequate resources, reduced budgets, and the challenge of publicizing newly passed statutes.[9]  Indeed, the number of

---

[6] Loth, *supra* note 4.
[7] Mass. Gen. Laws ch. 272, § 8.
[8] Mass. Gen. Laws ch. 272, § 7.
[9] Jenifer B. McKim, *State Effort to Target Demand Side Prostitution Stalls*, WGBH, Nov. 17, 2013,

arrests for prostitution has dropped in Massachusetts.  In 1995, 2,835 individuals were arrested for prostitution-related offenses whereas only 944 were arrested in 2012.[10]  While that statistic reflects a law enforcement shift away from targeting prostitutes, the overall effect tends to embolden pimps who profit from prostitution.

14.     As a result, both street gang members and others who regularly engage in criminal activity in the Boston area have increasingly become involved in pimping.  According to the FBI, sex trafficking is the fastest-growing industry in organized crime.[11]  Perpetrators have formed organized human trafficking networks.[12]

15.     Pimps network with one another in a variety of ways.[13]  These networks tend to be informal and social, and can be both competitive and supportive.[14]  Some pimps trade, exchange, buy, and sell women among themselves.[15]  Some lend, trade, share, or give women to other pimps.[16]  Pimps also sometimes share resources, including sharing hotel rooms.[17]  The relationships between pimps is especially important when pimps travel to other cities.[18]

16.     Nationwide, an estimated 300,000 children are trafficked for sex each year.[19]  The number of girls trafficked in Massachusetts is much less certain.  The E.V.A. Center, a Boston-

---

http://wgbhnews.org/post/state-effort-target-demand-side-prostitution-stalls.

[10] *Id.*

[11] Jenifer B. McKim, *Sex Trade Clients Seldom Punished; An Intent Unmet in State's 2011 Trafficking Law*, Boston Globe, Dec. 9, 2013, at A1; *see also* Phyllis J. Newton, Timothy M. Mulcahy, & Susan E. Martin, Nat'l Opinion Research Ctr. at the Univ. of Chi., <u>Finding Victims of Human Trafficking</u> 1 (2008).

[12] Amanda Walker-Rodriguez & Rodney Hill, *Human Sex Trafficking*, Fed. Bureau of Investigation, http://www.fbi.gov/stats-services/publications/law-enforcement-bulletin/march_2011/human_sex_trafficking.

[13] Meredith Dank, PhD, Bilal Khan, PhD, et. al., *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major U.S. Cities*, Urban Institute Research Report, March , 2014, available at <u>http://www.urban.org/publications/413047.html</u>, p. 182.

[14] *Id.* at 180.

[15] *Id.* at 183 (citing prior studies).

[16] *Id.* at 183-4.

[17] *Id.* at 184.

[18] *Id.*

[19] Mass. Interagency Human Trafficking Pol'y Task Force, Findings and Recommendations 15 (2013).

based program for women in the sex trade, served 225 adult women between 2006 and 2011,[20] and the Children's Advocacy Center of Suffolk County reported that at least 480 children from Suffolk County have received services related to sex trafficking from 2005 to 2012.[21]  Younger girls are particularly at risk as they fetch higher rates than their older counterparts.[22]  The United States Department of Justice reported that the average age of entry into prostitution is 13.[23]  Indeed, girls as young as 11 have been identified as victims of sexual trafficking.[24]

17.     To find prostitutes, pimps loiter at local hang-outs, homeless shelters, and transportation centers, targeting vulnerable girls who may be runaways or homeless or suffer from substance abuse issues or neglect.  Pimps also look for vulnerable girls online on social networking sites.  Pimps lure these girls with promises of love and protection, eventually exploiting them for commercial sex.[25]  The victims are subject to alternating cycles of isolation, fear, and even physical abuse, including assault or starvation.[26]  Still, enforcement of sex trafficking statutes proves difficult because victims become attached to their traffickers, and law enforcement officers have difficulty breaking the pimp's psychological control over the victim.[27]  In addition, when victims do try to escape, they may have trouble finding help or determining whom they can trust.[28]  Given the troubled backgrounds of many of these girls, numerous

---

[20] *Id.*

[21] Suzanne Pienig & Theodore Cross, Children's Advocacy Ctr. of Suffolk County, *From 'The Life' to My Life: Sexually Exploited Children Reclaiming Their Futures: Suffolk County Massachusetts' Response to Commercial Sexual Exploitation of Children* 5 (2012).

[22] Newton, Mulcahy, & Martin, *supra* note 10, at 48.

[23] Mass. Interagency Human Trafficking Pol'y Task Force, *supra* note 12, at 15.

[24] Piening & Cross, *supra* note 14, at 5.

[25] *Id.* at 4-5.

[26] *Id.*

[27] Walker-Rodriguez & Hill, *supra* note 11.

[28] *Joint Statement with Anne C. Gannon, National Coordinator for Child Exploitation Prevention and Interdiction, Office of the Attorney General, Statement Before the S. Comm. on Homeland Security and Governmental Affairs* (2013) (statement of Joseph S. Campbell, Deputy Assistant Director, Criminal Investigative Division, FBI), *available at* http://www.fbi.gov/news/testimony/ combating-human-trafficking.

victims lack even the most basic resources—including shelter or food.[29]

18.     The recruitment tactics used by pimps vary and include the use of violence and drugs as well as forms of psychological manipulation.[30]   The pimps identify the victims' emotional dependencies, basic economic needs, and vulnerability to intimidation and coercion.[31] Thus, while some pimps use threats and physical abuse to control victims ("gorilla pimping"), others use more nuanced methods ("finesse" pimping).[32]   The methods of manipulation and persuasion can include a variety of non-verbal and indirect methods.[33]   For instance, it is common for pimps to enter into romantic and/or sexual relationships with women they are recruiting for prostitution.[34]   It is also common for pimps to prominently display symbols of wealth and create the image of an attractive associated lifestyle, and the promise of a better life.[35]

19.     Many pimps have a worker that fulfills a role known colloquially as the "Bottom" or "Bottom Bitch."[36]   The Bottom generally is an experienced prostitute that has a high level of knowledge about the business, has worked with the pimp of a significant period of time, who carries some management duties, and who may have a child or children with the pimp.[37] Bottoms are often used to train, manage, and even discipline other prostitutes.[38]

20.     The consequences of sex trafficking are serious: victims may suffer from anxiety, depression, substance abuse, and Post-Traumatic Stress Disorder.[39]   The effects of such

---

[29] *Id.*

[30] Meredith Dank, PhD, Bilal Khan, PhD, et. al., *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major U.S. Cities*, Urban Institute Research Report, March , 2014, available at http://www.urban.org/publications/413047.html at 157.

[31] *Id.*at 166.

[32] *Id.*  at 167.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 169.

[36] *Id.* at 153.

[37] *Id.*

[38] *Id.*

[39] Heather J. Clawson, Amy Salomon & Liza Goldblatt Grace, Treating the Hidden Wounds: Trauma Treatment and

psychological trauma can be permanent, and victims may turn to addiction to deal with their

pain.[40]  As a result, victims of sex trafficking often need some combination of substance abuse

treatment, medical treatment for sexually transmitted diseases such as AIDS or HIV, and mental

health services.[41]

***THE FEDERAL TARGETS***

21.      Over the course of the investigation, I have learned that **NORRIS, JEFFREYS,**

**LUNGELOW, SANCHEZ, KANDA** and others have worked together to commit federal

crimes, including violations of laws prohibiting the sex trafficking of minors or by force, fraud

and coercion, as charged in the Superseding Indictment.

**A.      COREY NORRIS a/k/a "Case" and "Jacorey Johnson"**

22.      **NORRIS** is 24 years old and a native of Dorchester.

23.      **NORRIS** was arrested on March 29, 2013 on the original indictment in this case,

and charged with sex trafficking of a minor in December 2013 for transporting a victim from

Massachusetts to Rhode Island for prostitution.

24.      Prior to his federal arrest, **NORRIS** had been arrested numerous times on local

charges.  **NORRIS** has juvenile a criminal history that includes juvenile arrests for the following

charges 2002 Assault and Battery on a Public Employee, Resisting Arrest, Disturbing the Peace,

Threatening, and Disturbing School Assembly; 2005 Possession of Class B Controlled

Substance, Crack Cocaine, Drugs within Park/Playground; 2005 Assault and Battery and

Larceny; 2006 Assault and Battery.  His adult record contains the following violations 2007

Possession of Class B, Controlled Substance in a School Zone; 2007 Assault and Battery; 2009

---

Mental Health Recovery for Victims of Human Trafficking (2008), *available at*
http://aspe.hhs.gov/hsp/07/HumanTrafficking/Treating/ib.htm.
[40] Molly M. Fleming, *The Bonds that Bind Them: Getting Sex-Trafficking Victims Out of the Game Requires Complex Care*, J. Record, Dec. 20, 2013.
[41] *Id.*

Operating After; (GA) 2009 Willful Obstruction to Law Enforcement, Driving while License is Suspended, and Fleeing or attempting to Elude Police; (ME) 2010 Unlawful Trafficking Drugs.

25.     **NORRIS** had a collaborative relationship with **JEFFREYS** of the type described in paragraph 15.

      **B.     RAYMOND JEFFREYS, a/k/a "Skame," "Skame Dollarz," and "Frenchy"**

26.     **JEFFREYS** is 26 years old and from Dorchester.

27.     **JEFFREYS** has a criminal history that begins in 2000, at the age of 13.  His juvenile record includes charges for multiple incidents with Assault and Battery, Unarmed Robbery, Armed Robbery, Assault with a Dangerous Weapon (Knife), and Assault and Battery with a Dangerous Weapon.  He was committed to the custody of the Department of Youth Services seven times.  His adult record includes convictions for Assault with a Dangerous Weapon (Handgun) and Threatening (January 2008); Giving a False Address and Hindering Police Duty (February 2009); and Possession of Class B Controlled Substance (December 2010). Jeffreys' criminal history also includes an arrest on charges of Intimidation and Threatening in May 2008 which were later dismissed.  In total, as an adult, Jeffreys has spent approximately 29.5 months in state custody.  He has never been arrested on federal charges.

28.     **JEFFREYS** travels frequently throughout the country.  As alleged in the Superseding Indictment, he brings prostitutes with him when he travels, and makes them available for sexual activity in a variety of states.  These include:  Massachusetts, Maine, Rhode Island, Connecticut, New Jersey, Nevada, Atlanta, and California.  He often visits casinos in these states, including casinos in Atlantic City (New Jersey), Las Vegas (Nevada) and Foxwoods (Connecticut).  In my training and experience, casinos are a common location for prostitution activity.

29.     **JEFFREYS** is a rap music performer, and promotes his career under the "Skame"

and "Skame Dollarz" persona on the internet and social media sites.  I have viewed a number of these pages.  Many of the pictures displayed on these sites show **JEFFREYS** displaying large amounts of cash and symbols of wealth.  For example, **JEFFREYS** uses a Facebook profile picture that displays the word "Skame" written in hundred dollar bills, and shows a gold Rolex watch on his arm.  He also discusses his Mercedes Benz and his frequent travels.  As discussed in paragraph 18, it is a common technique for pimps to recruit women through prominent displays of wealth.  Based on my training and experience, and my review of the images and messages posted on the page during the course of the investigation, I believe the **JEFFREYS** uses his Facebook profile to recruit women for prostitution.

30.     In addition to more subtle methods of recruitment and persuasion, **JEFFREYS** employs violence and threats to control women, as described in paragraph 18.  I have spoken with numerous witnesses who have described their significant fear of **JEFFREYS,** and my investigation has revealed evidence of threats made by him to women with whom he has had a romantic relationship and/or whom he has prostituted.

31.     **JEFFREYS** has fathered a significant number of children, reportedly over a dozen, with almost as many women.  Many of these women have worked as prostitutes for **JEFFREYS** before, during and/or after the birth of their children.  In my training and experience, it is common for pimps to father children with their prostitutes.  As discussed in paragraphs 17 and 18 above, pimps use a number of methods to manipulate the women that work for them and strengthen their control.  Having a child with a prostitute can be a means of achieving these goals:  it is a means for the pimp to further control the prostitute for a long period of time, is serves as a means of leverage over the prostitute (increasing her need to continue working for him to secure necessary support for her child) and it provides a means of ensuring that the prostitute remains loyal to the pimp – making her both less likely to work for

someone else and less likely to cooperate with law enforcement.

**C.     JACQUELYN R. LUNGELOW, a/k/a "Baby J"**

32.     **LUNGELOW** is a 26 year-old Jamaica Plain resident.

33.     **LUNGELOW'S** criminal record includes charges for Shoplifting (2006); Allowing Improper Person to Operate (when she was stopped by the Massachusetts State Police with Jeffreys) (2012); and Obtaining or Use Personal Identifying Information Without Authorization (2012 California).

34.     **LUNGELOW** is a former prostitute of JEFFREYS' and the mother of one of his children. She served in the role of "Bottom," as discussed in paragraph 19 for a significant period of time, including time periods charged the Superseding Indictment.

35.     **LUNGELOW** and Jeffreys ended their romantic relationship in approximately the summer of 2013. **LUNGELOW** subsequently filed a restraining order against **JEFFREYS**.

**D.     KAIRIS SANCHEZ, a/k/a "Lola"**

36.     **SANCHEZ** has numerous juvenile convictions including Unarmed Robbery (2009) and Destruction of Property and Knowingly Received Stolen Property and Operating without a License (2011). **SANCHEZ'**s adult convictions include Possession of Drugs (2013 Las Vegas); Engaging in Prostitution, Loitering, and Trespass (2013 Las Vegas); Soliciting/Engaging in Prostitution (2013 Las Vegas); Prostitution (2013 Atlanta); and Unlawful Trafficking Scheduled Drugs and Unlawful Possession of Scheduled Drugs (2013 Maine).

37.     **SANCHEZ** is a former prostitute of **JEFFREYS'** and the mother of one of his children. Since approximately the time that **JEFFFREYS** and **LUNGELOW** parted to the present **SANCHEZ** has served in the role of "Bottom," as discussed in paragraph 19, including the time periods charged in the Superseding Indictment.

38.     **SANCHEZ** is currently in custody in Maine serving a term of incarceration on

state charges.  **SANCHEZ** had been residing with **JEFFREYS** in Maine.

        **E.**      **JOHN KANDA, a/k/a "J"**

      39.      **KANDA** is a 21-year-old resident and a native of The Republic of the Congo.  He and his family obtained refugee status in the United States and he adjusted to become a Legal Permanent Resident.

      40.      **KANDA** is an associate of JEFFREYS in Maine.  As discussed in paragraph 15, pimps often form networks with other pimps and prostitutes may be "traded," "shared," "given" or "sold" to other pimps.  **KANDA** and **JEFFREYS** had this type of collaborative relationship.

      41.      **KANDA** employed a number of techniques to control women, as described in paragraph 18, ranging from subtle to more overt forms of coercion.

      42.      **KANDA** has numerous criminal charges.  **KANDA'S** juvenile charges include charges for Theft and Burglary (2010 Maine); Assault and Threatening (2010 Maine); and Robbery (2011 Maine).  **KANDA'S** adult charges include Assault on an Officer (2011 Maine); Reckless Conduct (2011 Maine); Violation of Condition of Release (2013 Maine); and Aggravated Assault, Criminal Trespass, and Violating Condition of Release (2013 Maine).

## *CONCLUSION*

43.     For the foregoing reasons and those to be offered at the hearing, each of the

Targets should be detained pending trial.

Respectfully submitted,

Stacy Fleischmann
Special Agent
Homeland Security Investigations